The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. First case for argument this morning is 192078 Albright v. United States. Mr. Stewart, whenever you're ready. Thank you, Your Honor. This is Tom Stewart for the appellants. This consolidated appeal pertains to 26 deeds in the aggregate that were issued to the railroad in the first decade of the 1900s. And the only issue is whether the deeds conveyed an easement or fee under Oregon law. Combined, the 26 deeds apply to 119 landowners who collectively own 136 parcels. Since the only issue on appeal presents a pure question of law, the standard of review for this court is a de novo review, which is particularly significant in this case because the CFC never even considered the surrounding circumstances at the time the deeds were executed, which is a requirement under Oregon law. All of the plaintiffs asked this court to reverse the CFC's determination that the deeds conveyed a fee interest to the railroad for three primary reasons. First, in order to ascertain the intent of the parties, the court must look to the law and the surrounding circumstances when the deeds were executed. And that includes the statutes that existed in Oregon at the time, the common law of Oregon, and the railroad's charter, something the CFC completely failed to do. Second, all of the deeds at issue specifically state that the deeds were granted to the railroad after the railroad surveyed, located, and staked out the right-of-way pursuant to the railroad's power of eminent domain. And as this court specifically stated in Preso 2 in an en banc ruling, because the deeds were all executed under the compulsion of eminent domain, and the clear purpose of each deed was to merely confirm a grant to utilize the strip of land for the construction and operation of the railroad, which is a limited purpose under Oregon law, that creates a presumption of an easement by itself. And that is something that the CFC never considered either. And then finally, in addition to the compulsory consent, the railroad's charter, the existing statutes and common law of Oregon, each of the deeds at issue contain several other indicia that indicate and confirm, frankly, that the grant was merely intended to grant an easement. Under the leading case in Oregon, which is the Bernard's case, which was also cited by this court as authority in Preso 2, the CFC erred in holding that the deeds at issue conveyed fee title because the deeds conveyed easements to the railroad under the compulsion of eminent domain. First, in order to determine... Mr. Stewart, this is Judge Toronto. Can I ask you, I know that what we said in the en banc preso citing Vermont law about the more or less self-evident fact that voluntary deeds are entered into under the shadow of the railroad's eminent domain power. But is there any Oregon case that relies on that background power of the railroad together with the idea that that power, namely eminent domain judgment, would be limited to an easement, that that influences how the voluntary deed is to be interpreted? Yes, Your Honor. And it's, frankly, all the way back to 1882 in the Oregon Railway case, where the Supreme Court of Oregon specifically stated that the land taken for a particular use for which it is thought to be appropriated, that is, in this case, for the purpose of a railroad, granted an easement only. And specifically, the Oregon Railway case cited the treatise of Redfield on Railways, and specifically stated that, in such a case, it has been held that the rights of the company are the same as where they take their land under their compulsory powers, end quote, which is exactly what we have here. And, in fact, numerous Oregon Supreme Court decisions have shown... Just to be clear, the case that you just cited was a voluntary deed case or a compulsory eminent domain judgment case, just on the facts? It was a compulsory eminent domain case, Your Honor. So you rely on the citation to Redfield as supplying that. And would that mean that if the railroad says, we can go and get your land or get an easement on your land through the court, but let's make this easier, and the landowner says, okay, but you sure are going to have to pay if you want the entire... to be done with us, right, to want the fee simple interest, and the railroad says, sure, we'll pay you a very large sum of money for that, that still would... how would that be treated in terms of interpreting the voluntary deed that results? I think that's an example like Boosh, Your Honor, where the consideration was substantial, $650, and obviously under that scenario, the court would still have to look at the factors, one of the factors being a consideration. But it is illogical and defies common sense to think that landowners would grant a substantial portion of their land, particularly crossing or through their land, for $1 and assume that the railroad is acquiring a fee ownership in that. What are we to make of the... I gather a number of the 26 deeds at issue have facially nominal consideration, others have facially not nominal consideration. How are we to assess the role of that here, particularly because we don't know whether the stated consideration was the full consideration? Well, I think the stated consideration is always applied in all of these deeds, and frankly in all of these cases, and certainly is applied in Oregon. And so I believe the court has to conclude that the stated consideration of $1 is exactly what it is. Isn't there a 2004 case called Real Vest Corporation where the Oregon Appellate Court said no, no, no, even though it's $1, we're not clear at all that this was the true consideration? Isn't there a case that this sort of leads you away from the stated $1 consideration? I think there are cases out there, Your Honor, that recognize that on occasion the railroad would actually pay something more than what's actually stated in the deed. We don't dispute that. But there's no evidence of that in these cases at all, and in fact that's why I think the Oregon Supreme Court when confronted with this issue has always treated the consideration of $1 as being one of the factors to consider. Not conclusive, but one of the factors to consider. And similarly, like in the Boosh case where the consideration was $650, that is also one of the factors to consider. Mr. Zhu, can I just ask you a question? In the gray brief, I think your gray brief, there is a reference to how the world of property interests may not be neatly divided between fee simple on one hand and easement on the other hand. There are terminable estate interests, something that may be referred to in, is it the Capelli footnote? One of the cases. This case was fully framed in the Court of Federal Claims, and I think at least until the reply brief, in terms of a binary choice, easement versus fee simple. What am I to make of the reference to terminable estate interests when the estate interest is on condition of some use? I'm a little confused about whether we need to address that or not. Well, I don't believe you need to address it in this particular case, but to clarify that point, I believe it was in a brief filed by Aaron Fox, and it specifically refers to fee simple determinable as another alternative to either fee simple absolute or easement, and that's what really Capelli was talking about in the footnote. I'm sorry, I was not precise enough. Was there any reference in the Court of Federal Claims or in any of the blue briefs here to that notion, or is this as properly presented to us a pure binary choice, easement or fee simple? I believe it's a pure binary choice, Your Honor. And have we or the Oregon courts used the term easement in such a way as to encompass the kind of terminable fee interest discussed in that Capelli footnote? Yes, I think repeatedly, Your Honor. I mean, the Capelli footnote just recognizes that a grant to a railroad, even if it's an easement, is a substantial thing because it generally has the right to exclude others. And in frankly all of the cases, Waysan was not actually a deed to a railroad, but it was a strip of land for a road. That was the purpose. Frankly, in Capelli and EGOS and Bernard's and the Oregon Railway case and frankly anything where there is a statement about the manifest purpose of the grant, that is meant to be an easement. And here the manifest purpose is the construction and operation of the railroad. That's exactly what Capelli, Waysan, and Bernard's all say. And the courts basically say that you're supposed to give controlling significance to the language of use and purpose in a deed. That was confirmed by the Oregon Supreme Court in Doyle v. Gilbert and then also confirmed by the Oregon Supreme Court in Hall v. Meyer where they said the general prevailing attitude is favorable to the finding of an easement. Whenever that type of interest serves the manifested purpose of the parties and that's precisely what we have here. This is Judge Lynn. I know you disagree with the government's position on this, but the government is contending that the Oregon statute creates a presumption in favor of a fee conveyance. And if it doesn't create a presumption, it certainly reads like it at least tips decidedly toward a fee conveyance in the absence of some compelling circumstance or indication otherwise. And that seems to me to be consistent with the way the factors are set forth in Bernard's, that every one of those factors is whether something tips toward an easement. Well, if you're talking about whether something tips toward an easement, then presumably you're starting with the presumption that it's not. What's your comment? I believe, Your Honor, that the government's reliance on a presumption of fees is totally fictitious. In fact, the Supreme Court of Oregon specifically rejected that false premise in Capelli where it instructed the parties not to be overly technical to determine the meaning of the deed from the surrounding circumstances, and the Oregon Supreme Court specifically stated that the statute is not even helpful in that regard. And similarly instructed against over-reliance on any reading of a deed that was highly technical and told all the parties that the intent of the grant or for the language of the deed itself must be derived from the surrounding circumstances. And if you take a step back, and I won't go through all of the quotes in Preso 2 that specifically recognize the whole concept of compulsory consent, but this case presents a rather obvious and egregious error because, number one, Oregon Supreme Court has repeatedly stated that the court must consider the surrounding circumstances at the time the deed was executed. And the Oregon Supreme Court recognized the compulsory consent issue, frankly, between seven and nine times between 1869 and 1911. This court specifically addressed the concept in 1996 in Preso 2 and even cited the Oregon Supreme Court's decision in Bernard's and every one of the deeds specifically incorporate Oregon's statutory scheme because the right-of-way was already surveyed, located, staked out, and even constructed. Now this issue was fully briefed before the CFC, and then the CFC completely ignored the issue, didn't address the surrounding circumstances as directed by the Oregon Supreme Court, ignored the common law of Oregon, ignored Wayson, Oregon Railway, Redfield's treatise, and even the railroad's charter, ignored the wording of the deeds, and ignored this court's en banc opinion in Preso 2. And frankly, that failure is a very significant error and must be corrected by this court's de novo review. Now if I can talk back to Judge Lynn's question for just... I'm sorry. Mr. Stewart, can I ask a specific question? Does the record show who drafted the deeds at issue? Not precisely, Your Honor. I don't believe there's any clear indication of who exactly drafted them, although many of them were Form Ds that were typed up. Many of them are the same. And I think there are some cases that specifically say that it can be inferred that the railroad drafted the deeds. But I don't believe the record is specifically clear on the ultimate conclusion that the railroad absolutely drafted them. And if I can go back to Judge Lynn's question for just a moment about the factors, I think it's important to note that all of these deeds at issue possess multiple factors that the Oregon Supreme Court has looked to to be indicative of an easement. And I won't go through all the factors in Bernard's or the factors in Bouche. But I think it's important to know that, frankly, the decision in Bouche is an aberration. Oregon courts don't even cite to it. And I'm not even sure it's particularly relevant because the reality is that that did not involve a deed to a railroad. It involved a deed to a lumber company. And if you look at the Bouche opinion carefully, there were two different sections involved, one Section 7 and one Section 12. The original deed in Section 12 was not even presented for the court's review, and the deed in Section 7 did not contain any language concerning a strip of land. So the only thing we can say for sure is that seven of the eight factors in Bernard's were not present in Bouche, and there was no compulsory consent either. On the other hand, in this case, in addition to compulsory consent, these deeds all possess multiple factors that the Oregon Supreme Court looked to in Bernard's and Bouche to be indicative of an easement. In this case, in addition to the compulsory consent, all of the deeds at issue describe a narrow strip of land, which is Factor 8 in Bernard's. And I do want to say one thing about that because Oregon has a very strong public policy against construing deeds conveying long and narrow strips of land granted to a railroad as fee-simple absolute deeds. In light of the desirability of having such strips return to the adjacent owners at the end of the railroad use, that is State Department of Transportation v. Tolke in the briefs at 586 Pacific 2nd 591, and that basically is a statement of Oregon's public policy on the use of strips of land. In addition, all of the deeds at issue say that the strip of land is running across or through the grantor's land, which is Factor 3 in Bernard's. All of the deeds at issue describe the grant without specificity, which is Factor 6 in Bernard's. Almost all of the deeds include nominal consideration, which is Factor 7 in Bernard's. And many of the deeds use the phrase right-of-way in the body of the deed to describe the interest, which is Factor 2 in Bernard's. And so in reality, what we have is a situation where almost all of the deeds have at least four of the factors in Bernard's plus compulsory consent. Nine of them have five factors plus compulsory consent. Five of them have the right to build, maintain, and operate a line of railway thereover, which frankly should be dispositive under Oregon law. Four of them are entitled to railway deed, which should also be dispositive and is at least a fifth factor under Bernard. And one deed, the Lloyd Smith deed, has six factors, counting the fact that it was a grant of a right-of-way hereby conveyed, and we believe that should be dispositive as well. I did not hear a ding on my time, but I believe my time has got to be up, at least for this portion. If there aren't any other questions at this point, I'd like to reserve my time for rebuttal. I agree. It feels like it might be closed. Thank you. We'll reserve the need of your time for rebuttal. Let's hear from the government. Good morning, and may it please the Court. My name is Anna Katselis, and I represent the United States in these appeals. The Court of Federal Claims correctly ruled that the plaintiff's takings claims cannot proceed because the plaintiffs failed to establish that they actually possess compensable property interests under Oregon law. And to be clear, this case requires the Court to apply Oregon law, not Vermont law, which this Court applied in pre-salt 2. And in Oregon, the law is quite clear, and it does in fact contain a clear, long-standing statutory presumption in favor of fee-simple conveyances. This is Jeff Toronto. What do you do with the statement in Capelli that said that statutory language, I think the language is not helpful. And as far as I can tell, even though that's almost 50 years old, 1972 I think it was, that discounting of the significance of the statutory language has not been modified since then. And there was a reason for it, right, which had to do with the removal of the heirs language. But the statutory language is one thing. Capelli is another thing. Where does that leave us? Well, Your Honor, I think that the statement in Capelli, I mean, ultimately, I mean, the practical consequence, when you look at the statute, the practical consequence of abolishing the ancient rule is to create a presumption in favor of fee conveyances. And I think, you know, that the statute is significant, is obvious and evident from its application in Boosh. Boosh set forth that statute at the beginning of its analysis. And if it were irrelevant. I just want to follow up. It seems to me you just shifted away from an answer to my question. Capelli says the statute is not particularly significant in interpreting the deed. Rather, move away from technical considerations. Look at what you can infer about the intent based on the substance of surrounding circumstances. What does that leave of the statute? As opposed to, right, this is the Oregon Supreme Court pronouncing on the statute. And I take it we're obliged to follow the Oregon Supreme Court's pronouncement about the role of the statute, not simply follow what would appear on the face of the language to be something different from that. Correct, Your Honor. I mean, the court in Capelli did not abolish or overturn the statute. The statute remains in effect. Instead, it said that it was not helpful precisely because the focus should be on the substantive considerations governing intent. And I'm trying to figure out what we do with that and not just ignore it. Your Honor, I think that when you look at Capelli, the way that the court analyzed the deed before it is entirely consistent with the way that the court analyzed the deed before it in Boosh with respect to how the court analyzed the deed before it in Bernard. So our position of how the court must analyze the deed is entirely consistent with what Capelli, in fact, did in that case. So Capelli found most significantly the court explained that the deed before it purports to grant only a right of way. And also, and that's very consistent with what we have said with respect to Boosh and Bernard. The most significant factor, I mean, these deeds must be analyzed and the court must determine whether the intent to limit the conveyance to something less than the fee appears by the words of the conveyance. Capelli undertook the same analysis. And in the deed before it, the parties did express that intent because they only granted a right. Now, we have explained in our brief that none of the deeds before the court do that. They all, in the granting clause, convey land. None of them convey a right. And, of course, the granting clause is the most significant clause in the deeds. The plaintiffs in these cases are relying almost entirely on the descriptions of the parcels that are conveyed. Now, if you look at Capelli, if you look at Boosh, if you look at Bernard, the description of the parcel is not significant in determining intent. And Boosh went, you know, clarified the general rule in Oregon that, you know, grants of land convey the fee, whereas grants of rights convey an easement. I thought that the language in Boosh, which is striking in talking about the railroad thing, saying there's a class of cases about granting a right and those are easily easements. And then the next paragraph says, a grant of land, and there's some language. I don't have it in front of me. But without any further language, and here's the broad term, capacious term, seemingly, relating to the use or purpose. That's a more capacious description of what you'd characterize as the land grant cases than saying that there has to be a restriction to the use. It's language relating to the use or purpose. Go ahead. Yes. Respectfully, Your Honor, and Boosh is quite clear on this point and actually explained and clarified an error. So Boosh really establishes that the way that the words are used in the deed, the context in which the words are used in the deed must be given effect. And Boosh explained this with respect to the phrase right of way. It has a twofold meaning, the court explained, and it can be used to describe a parcel of land or to describe a right and that it does not limit the interest conveyed when it is used in the form of respect. So respectfully, Your Honor, after Boosh, the court cannot disregard the way that the words are used and where the words are used in the deed. Boosh establishes quite clearly that under Oregon law, the context must be given effect. And in these cases, we have gone through each of these deeds very carefully in our brief, Your Honor. If the court looks at the granting clause, it will not find any limitation to a use, any language restricting use in any of these deeds. Can I just focus on this once again? It seems to me that the language that Boosh uses, this is the on the other hand paragraph. On the other hand, the general rule concerning the grant of land, this is following the previous paragraph about the grant is a use. And we clearly have a grant of land, no question about that, to a railroad. As distinguished from the grant of a right or use thereof is stated in the following ALR annotation. But what that then quotes is that conveyances to railroads of a strip, etc., which do not contain additional language relating to the use or purpose, etc. I'm not sure that we don't have language in deeds that, or let me put it more positively, why doesn't the language in the deeds here contain language relating to the use or purpose, conceding for purposes of this question that they don't contain language restricting the use or purpose? All of them talk about the rail line, don't they? Well, Your Honor, I think this doesn't, they describe the parcel. In the descriptions of the parcel, there is this language. But I think when you look at Boosh and Bernard's and how they analyze these deeds, they are not, you know, Bernard didn't even set forth the description of the land in analyzing the deed. That's not where, I mean, where language restricting use would be found, would be in the conveyance, or possibly in the Habendum Clause. It is also the law in Oregon that the grant in the Granting Clause controls. And to the extent there is any inconsistency with another provision of a deed, what is granted in the Granting Clause controls. So, the way that the language, and we submit, Your Honor, that under Boosh, the way that the language is used must be given effect. The context must be considered. Boosh explained that courts that have not done that have got it wrong. So, while these deeds, you know, describe the parcel, you know, and it's quite reasonable for, you know, the description to describe the parcel in relation to the survey because it's very clear, it's very precise where the land is. But that isn't language that is restricting the use or demonstrating an intent to limit the interest conveyed. And I think perhaps that's helpful. The question is that the parties use language that signifies their intent to restrict what they are conveying to the railroad. And merely by referring to... Can I ask two, I guess, rather specific questions? One is, is the survey in the publicly discoverable property records upon the entry of a deed like this? I'm not sure, Your Honor. Because I guess part of what I took away from some of the cases was to the extent that they talk about how precisely defined the land is, or, you know, imprecisely or precisely, there's a kind of concern. And at least one of the plaintiffs' briefs talks about this. To the extent that the land, that the interest transferred is defined only as a certain strip, certain number of feet on either side of tracks, that at some point if the tracks disappear, how is the public to know what the definition of the property interest is? And one answer would be if the surveys are publicly available, then people would know. But if that would not be available, maybe that points a little bit in the direction of what's contemplated is an interest that is tied to the temporally defined use. Well, Your Honor, there's absolutely no support in Oregon law for the proposition that parties have to anticipate future changes in structures or the landscape. And, you know, we've explained in our brief that the restatement specifically identifies survey, a prospective survey, as an example of one way that a fee can be identified in a deed. This is even more than that because it's, of course, a completed survey. So, you know, in construing these deeds, the court must apply Oregon law as it is established. One other question. I think Mr. Stewart, if I heard him, and I may not have heard him correctly, in discussing Boosh said that the land that was at issue was not itself being used as a railroad. Can you clarify what this path is in Boosh? Well, it was a lumber company, but it was a railroad, Your Honor. So I don't think that's at all significant. The Silverton Lumber Company constructed a railroad running through the strip of land in dispute. So it was, I mean, there's no, this is, of course, it's a railway case. So I don't know that it matters that it's a railroad for lumber as opposed to a railroad for something else. I don't think there's any significance of that at all. Can I just ask you the same question I asked him? Does the record tell us or is it disputed who wrote these deeds? It's not clear, Your Honor, but I think some helpful points on that are that they're clearly not form deeds. Parties chose specific words and parties chose very, you know, some different words in some different respects. And we actually think it would be quite helpful for the court to look at some of the deeds that we conceded conveyed an easement because parties certainly, and of course, it is definitely the rule in Oregon that any ambiguity is construed against the grantor of the land. Well, that wasn't actually so clear to me. The language of grantor, I forget which case this comes from, is very specifically tied to the language of the drafter because in the context that case was talking about it, there the grantor was the one who was reserving the easement. And I took that just on the assumption that the principle is for deeds as for contracts and similar things. Language is construed against the drafter. It conceivably could matter whether the railroad was the one drafting or not. No, Your Honor. If I may, the rule is clearly that the ambiguities are resolved against the grantor. And first of all, this isn't a case where the plaintiffs have reserved easements. So I think there was an attempt to introduce some confusion, but they are plainly the grantors. They weren't reserving anything. But even in that circumstance, and I think they were cited in one of the reply briefs, this Verziano v. Carpenter case for the proposition that the rule is different when you're talking about a reservation. But if I could point the court to Tipperman v. Tiziotto, 964 P2D 1015-1019, Note 3, the Supreme Court of Oregon said that that court got the rule wrong. And ultimately, the rule is that the seller, the ambiguity is reserved against the seller, regardless of whether they are reserving or granting. They said the seller who reserves an easement is the grantor. The ambiguities are resolved against them. But in this case, you don't even have that question. It's clearly the grantor. But again, if I may, Your Honor, these deeds and parties chose very different language. So for example, some of the deeds we conceded conveyed an easement, Hammond Lumber. This is at Appendix 1317 to 1323. Grants, quote, an easement to it, a perpetual right of way for the purpose of building and thereafter maintaining and operating a railroad on. You know, Miami Lumber conveyed, quote, the right upon conditions here in express to enter upon such premises and to make the necessary survey and measurements. So parties chose very different terms. The parties, the plaintiff's predecessors and interests before the court did not choose to limit their conveyances. And if I could just respond to one or two more points that plaintiffs made. First and foremost, there is no support in Oregon law. And Judge Toronto, this goes to your question. There is no implied limitation or any significance at all to the fact that the railroad surveyed and located its route prior to that. The Oregon courts analyzed eminent domain cases and voluntary conveyance cases differently. This is clear from Boosh in which set forth the applicable analysis that it is the intent with the presumption of a fee in the voluntary conveyance case. The Oregon Court of Appeals made this clear in EGOS v. Columbia County when it rejected the county's reliance on Boosh because Boosh is voluntary conveyance. So plaintiffs relied a lot on Oregon Railway. It's an opposite because it's also an eminent domain case. The analysis is different here. And there is... Can I ask one other question about, I guess, about Oregon law? Is the fact that Boosh is an en banc decision relevant to how much to weigh it? I don't remember seeing an argument in your brief or in any of the briefs about whether it matters that Bernard is a panel decision and Boosh is an en banc decision. Well, we didn't make that point, but that is correct. It is an en banc decision. Bernard's is not. So that is a... Right. But, I mean, obviously, in our world, an en banc decision does have distinctive properties. But I don't... I guess I'm not being from Oregon or a student of Oregon law. I don't know if Oregon treats en banc decisions as having stronger precedential effect than non-en banc Oregon Supreme Court decisions. Do you know? I am not. I'm afraid I'm not sure of the answer to that question, Your Honor. But I do think, you know, you don't even... It doesn't even matter here because, you know, when you look... I mean, Boosh and Bernard are very helpful cases. I mean, this court was in a much more difficult position in pre-salt because Vermont law, you know, the court acknowledged uncertainty because the cases were very old and not entirely clear and there was, you know, no mechanism to get an answer from the Vermont Supreme Court. But here, you have two cases, two Oregon Supreme Court cases construing essentially opposite deeds. And respectfully, Your Honors, this is quite... It is not a close question because the deeds before the court are analogous to the deed in Boosh in all material respects. Judge Prost, to return to your point, you are correct that the Oregon Court of Appeals and Reveals Corporation attached no significance to a recitation of nominal consideration because it is not evidence that that was the actual consideration given. And as we have explained in our brief, that is the only respect that any of the deeds before the court today are similar to the Bernard's deeds and that's not even true of all of them. But all of these deeds grant land. None of them contain a reverter. These are just on their face. These deeds convey the fee. And Judge Firestone went through them carefully and correctly. She correctly applied Oregon law which looks to whether the intent to restrict the interest is in the words of the deed. There is no support, again, for this idea that a survey and location is significant. It had occurred in Boosh and the court didn't even mention it. If it were significant, if that were, yes. I think you're beyond your time unless my colleagues have any further questions. I think we'll turn back to Mr. Stewart, but thank you. Thank you, Your Honor. And Mr. Stewart, you were correct. There was something wrong with our tone here. So I think you exceeded your time, but certainly to even it out, we'll restore five minutes of rebuttal and patience if needed. Thank you, Your Honor. I want to start with the fact that throughout the government's 22 minutes or whatever it was, they still did not talk about the surrounding circumstances at the time of the execution of these deeds. And that is not only a part of Oregon's common law. It's actually statutory in Oregon because Section 42.220 specifically says that the circumstances under which a deed was made, including the situation of the subject and the parties, may be shown that the judge is placed in the position of those whose language the judge is interpreting. There was also some discussion about Boosh and whether it was a railroad or a lumber company. The important distinction there is that the railroad in Bernard's had the power of imminent domain and the lumber company in Boosh did not, which by definition basically throws out the entire concept of compulsory consent. Furthermore, in Boosh, there's no question they used a very extensive meets and bounds description describing it with particularity. I won't go through all the quotes in Preso 2, but one of them is particularly significant, particularly since this was an en banc ruling of this court. And the court directly cited the Oregon Supreme Court's opinion in Bernard's in Preso 2 for the proposition that, quote, practically without regard to the documentation and manner of acquisition, when a railroad for its purposes acquires an estate and land for laying track and operating railroad equipment thereon, the estate acquired is no more than that needed for the purposes, and that typically means an easement, not a fee simple estate, end quote. That is the purpose of all of these deeds at issue because they were done pursuant to the imminent domain statute that the railroad had the benefit of. And what has happened over time, unfortunately, is many courts, particularly when examining deeds that are well over 100 years old, the courts tend to ignore or forget about these circumstances, the parties at the time, and the power of imminent domain, et cetera. But you can't really ignore them in Oregon because they are specifically adopted, and in turn, this court actually referred to them and adopted them in Preso 2. The fact of the matter is that although the government referred to the detail in which the CFC reviewed these deeds, the CFC made no effort whatsoever, as I mentioned before, to actually discuss or analyze the surrounding circumstances at the time. And it's pretty clear that the common law of Oregon clearly recognizes compulsory consent. I also want to talk just briefly about, in response to one of Judge Toronto's questions about the use and purpose and the language, Bush itself instructs the courts to specifically look for additional language relating to the use or purpose to which the land is to be put, or in any other way, cutting down or limiting directly or indirectly the estate conveyed. And in all of these deeds, frankly, the use and purpose is obvious and undeniable. When a railroad acquires a narrow strip to operate its rail line, frankly, what else is needed? What else is there? And that's exactly what this court said in Preso 2. This is Judge Toronto. Just remind me, why would that not have been equally true in Bush? It was true in Bush, Your Honor, except it wasn't a strip for a railroad company. It was a strip for a lumber company. I'm sorry, but it was a strip for a railroad, a rail line, let's call it, right? It was actually a strip that was already there that was deeded to the lumber company who already owned the surrounding land. I'm sorry, I think I'm not hearing an answer to my question. Was that strip used and under the deed to be used for a rail line, no matter the legal identity of the company that was running that rail line? Yes, it was used. They transported their logs by rail. Okay. Yeah, and they later then abandoned it and basically made a road out of it. And the other thing that I want to refer to is the factors, and I went through them before about all the deeds contain at least four, five, or six of the Bernard's factors, but inexplicably, the CFC first considered all of the factors in Bernard's in its preliminary ruling, and then when the final ruling was issued, the CFC completely disregarded three of the factors, and specifically, the CFC disregarded factors three, six, and eight, ostensibly because, quote, virtually all of the disputed deeds, end quote, possessed them. And the CFC's decision to completely discard three of the eight factors listed by the Oregon Supreme Court as being essential to the inquiry as to whether the grantor conveyed an easement or fee is a monumental and fundamental error in and of itself, which when you combine it with the fact that there was no discussion about the surrounding circumstances at the And then finally, not only... I'm sorry. If you have one final point, I think I heard the bell go off. I'm not positive, but I think the time has run, so make your final point. Okay, I'll just make one last point, Your Honor, very briefly, and that is not only is the CFC's decision to completely disregard three of the eight factors listed by the Oregon Supreme Court as being essential to the inquiry a monumental and fundamental error in our law and contradicts the CFC's earlier decision in Boyer. And although we recognize that the CFC's ruling in Boyer is not precedent for this court, there is no question but that the rulings are inconsistent. And in this case, it actually results in a manifest injustice has occurred where landowners in this case would have prevailed based on the CFC's prior ruling in Boyer, and the landowners in Boyer would have lost under this analysis just a couple of years later. Thanks. With that, I appreciate it. Thank you, Your Honor. Thank you. We thank both sides, and the case is submitted.